DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
MOLLY M. LENS (S.B. #283867)
mlens@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

KENDALL TURNER (S.B. #310269)
kendallturner@omm.com
O'MELVENY & MYERS LLP
1625 I Street NW
Washington, DC 20006
Telephone:  (202) 383-5300
Facsimile:   (202) 383-5414

Attorneys for Twentieth Century Fox Film
Corporation d/b/a 20th Century Studios

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWENTIETH CENTURY FOX FILM CORPORATION d/b/a 20th Century Studios, a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br>JAMES E. THOMAS and JOHN C. THOMAS<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Twentieth Century Fox Film Corporation d/b/a 20th Century Studios ("20th Century"), for its complaint against defendants James E. Thomas and John C. Thomas, alleges as follows:

## NATURE OF THE ACTION

1.     Generations of viewers have enjoyed *Predator* films since 20th Century released its first movie over three decades ago.  Defendants, authors of a screenplay entitled "*Hunters*" (the "*Hunters* Screenplay") that 20th Century acquired in 1986, seek to abridge 20th Century's rights through two premature and invalid copyright termination notices.  While federal statutory copyright law endows certain grantors, like defendants, with copyright termination rights, such rights may only be exercised in accordance with the statute's requirements, including provisions delineating when termination notices may be served and when the termination of rights becomes effective.  Defendants' notices fail to comply with these statutory requirements and are invalid as a matter of law.

2.     20th Century seeks a declaration pursuant to 28 U.S.C. § 2201 that defendants' notices of termination are invalid.  This action is necessary because defendants are improperly attempting to prematurely terminate 20th Century's rights to the *Hunters* Screenplay, at the very time that 20th Century is investing substantial time, money, and effort in developing another installment in its successful *Predator* franchise.

## PARTIES

3.     Twentieth Century Fox Film Corporation d/b/a 20th Century Studios is a corporation organized and existing under the laws of Delaware, having its principal place of business at Los Angeles, CA.

4.     Upon information and belief, defendant James E. Thomas is a resident and citizen of California.

5.     Upon information and belief, defendant John C. Thomas is a resident and citizen of California.

COMPLAINT FOR
DECLARATORY RELIEF

**JURISDICTION AND VENUE**

6.     This is an action for declaratory relief brought under 28 U.S.C. §§ 2201, *et seq*., and under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.* This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.     This Court has personal jurisdiction over defendants because defendants are domiciled in California.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to 20th Century's claims against defendants occurred in the Central District of California.  The subject grant was entered in this District; the challenged termination notices were prepared and transmitted in this District; and the subject work was published in this District, to any extent it was published by publication of the initial *Predator* film.  Upon information and belief, venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because defendants reside in the Central District of California.

**20TH CENTURY'S VALUABLE INTELLECTUAL PROPERTY**

9.     The *Predator* franchise is a science fiction action movie series, dating back to the release of the initial *Predator* film in June 1987.  The series follows a bloodthirsty extraterrestrial creature that hunts humans.

10.     The first *Predator* film, titled *Predator*, starred Arnold Schwarzenegger as the leader of an elite military team that faced off against the Predator in the rainforests of Central America.

11.     In the wake of that success, 20th Century produced and released three sequels (*Predator 2*, *Predators*, and *The Predator*) and two crossover films with 20th Century's popular *Alien* franchise (*Alien vs. Predator* and *Alien vs. Predator: Requiem*).

12.     20th Century is currently preparing to produce a fifth installment in the *Predator* franchise, creating an immediate need for the adjudication of its continued

COMPLAINT FOR
DECLARATORY RELIEF

1  intellectual property rights.

2      13.    20th Century has invested hundreds of millions of dollars in the

3  *Predator* franchise, building it from the ground up, over the course of several

4  decades.

5
6  ### DEFENDANTS GRANT 20TH CENTURY THE RIGHTS TO THE *HUNTERS* SCREENPLAY

7      14.    Defendants authored the *Hunters* Screenplay, dated September 3,

8  1984, which features an extraterrestrial hunter.  Upon information and belief, the

9  *Hunters* Screenplay was not registered with the U.S. Copyright Office.

10      15.    On January 22, 1985, 20th Century entered into an option agreement

11  with defendants, whereby 20th Century paid defendants a lump sum in exchange

12  for "the exclusive and irrevocable right and option" to purchase the *Hunters*

13  Screenplay and all associated rights (the "Option Agreement").  In the Option

14  Agreement, defendants represented and warranted that the *Hunters* Screenplay

15  "ha[d] not been published in any place in the world."  The Option Agreement

16  confirmed that, if exercised, the grant would convey "all of [defendants'] right, title

17  and interest in and to [the *Hunters* Screenplay]," and, among other enumerated

18  rights, expressly covered the right to publication.  A true and correct copy of the

19  Option Agreement is attached hereto as Exhibit A.

20      16.    20th Century exercised its option and acquired the rights to the

21  *Hunters* Screenplay on April 16, 1986 (the "Grant").  In the Grant, defendants again

22  represented and warranted that the *Hunters* Screenplay "ha[d] not been published in

23  any place in the world."  The Grant conveyed "all of [defendants'] right, title and

24  interest in and to [the *Hunters* Screenplay]," and, among other enumerated rights,

25  expressly covered the right to publication.

26  ### 20TH CENTURY TRANSFORMS THE *HUNTERS* SCREENPLAY

27      17.    In a series of written agreements, 20th Century engaged defendants on

28

COMPLAINT FOR
DECLARATORY RELIEF

a work made for hire basis to rewrite the *Hunters S*creenplay.  Each agreement provided that the rewrite would constitute a work made for hire, and 20th Century would be deemed the author.

18.     Defendants, along with at least one other screenwriter, rewrote the screenplay several times over a multi-year period.

19.     Ultimately, this iterative rewriting process yielded the screenplay for the original *Predator* film, entitled *Predator: a.k.a. Hunter*, which was registered with the U.S. Copyright Office on August 4, 1986, under document number PAu000869999 (the "*Predator* Screenplay").  Consistent with the aforementioned agreements, the *Predator* Screenplay was registered as a work made for hire for 20th Century.

## 20TH CENTURY RELEASES *PREDATOR* AND DEVELOPS A ROBUST FRANCHISE

20.     On June 12, 1987, 20th Century released *Predator*.

21.     Prior to such release, neither the *Hunters* Screenplay nor the *Predator* Screenplay (nor any version thereof) was published.

22.     The film was registered with the U.S. Copyright Office for federal copyright under registration number PA0000329509.  The registration specified a publication date of June 4, 1987.

23.     *Predator* performed strongly at the box office, and 20th Century decided to continue the franchise.

24.     In the decades that followed, 20th Century produced and released three sequels to *Predator* and two crossover films with its *Alien* franchise.  Another installment in the franchise is currently underway.

## DEFENDANTS SERVE 20TH CENTURY WITH THREE NOTICES OF TERMINATION

25.     On or about June 9, 2016, defendants served a notice of termination on

COMPLAINT FOR
DECLARATORY RELIEF

20th Century, purporting to terminate the grant of rights under copyright to "the original screenplay written by James E. Thomas and John C. Thomas entitled 'Hunter' a.k.a. 'Hunters' a.k.a. 'Predator,'" effective April 17, 2021 ("Notice One").  Notice One states that "the Work was registered with the U.S. Copyright Office on August 4, 1986 under Copyright Registration No. PAu000869999."  Notice One was recorded with the U.S. Copyright Office under document number V9938D157.  A true and correct copy of Notice One is attached hereto as Exhibit B.

26.     In January 2021, 20th Century explained to defendants that Notice One was invalid for several reasons, including that (i) the *Predator* Screenplay cited in Notice One as being recorded with the U.S. Copyright Office under Copyright Registration No. PAu000869999, was a work made for hire and therefore not terminable, and (ii) the effective termination date was invalid, as it was inconsistent with the timing specified in 17 U.S.C. § 203(a)(3).

27.     In response, on or about January 12, 2021, defendants served another notice of termination on 20th Century, again, like Notice One, directed at "the original dramatic work written by James E. Thomas and John C. Thomas entitled 'Hunter' a.k.a. 'Hunters' a.k.a. 'Predator'" ("Notice Two" and, together with Notice One, the "Notices").[1]  Notice Two states that "[a] subsequently revised version of the Work was registered with the U.S. Copyright Office on August 4, 1986 under Copyright Registration No. PAu000869999."  Notice Two specifies an effective termination date of June 14, 2022, which is less than two years after it was served, in violation of 17 U.S.C. § 203(a)(4)(A).  A true and correct copy of Notice Two is attached hereto as Exhibit C.

28.     Notwithstanding the Notices' intentional reference to the copyright

---

[1] At this same time, defendants also served a third notice of termination similarly directed at "the original dramatic work written by James E. Thomas and John C. Thomas entitled 'Hunter' a.k.a. 'Hunters' a.k.a. 'Predator'" ("Notice Three").   Notice Three is not at issue in this lawsuit, though 20th Century reserves all rights with respect thereto.

COMPLAINT FOR
DECLARATORY RELIEF

registration for the *Predator* Screenplay and purposeful invocation of the "Predator" name, the only grant that the Notices could conceivably apply to is the Grant, *i.e.*, the April 16, 1986 grant of rights to 20th Century of the *Hunters* Screenplay.

29.    Defendants have not withdrawn either of the Notices.

30.    Faced with defendants' premature and invalid notices of termination, 20th Century commences this action to affirm its rights.

## COUNT I: ACTION FOR DECLARATORY RELIEF

### [Against All Defendants, as to Validity of Notice One]

31.    20th Century repeats and realleges each allegation contained in paragraphs 1 through 30 of this complaint as if fully set forth herein.

32.    Defendants have served 20th Century with Notice One, which contains a purported effective date of April 17, 2021.  Defendants recorded Notice One with the U.S. Copyright Office.

33.    Defendants have not withdrawn Notice One.

34.    Notice One is invalid as a matter of law because it provides for an effective termination date outside the termination window specified in 17 U.S.C. § 203(a)(3).  In particular, as the Grant covers the right to publication, Section 203(a)(3) provides that the Grant can be terminated during a five-year period beginning "at the end of thirty-five years from the date of publication of the work under the grant or at the end of forty years from the date of execution of the grant, whichever term ends earlier."

35.    Pursuant to Notice One, defendants purport to recapture the exclusive rights in the *Hunters* Screenplay upon the April 17, 2021 effective date.

36.    By virtue of defendants' conduct, 20th Century has a real and reasonable apprehension of litigation over any claim by defendants that 20th Century's continued development of the next *Predator* movie infringes defendants'

rights and has thus been brought into conflict with defendants.

37.     Defendants' conduct threatens to place a cloud over 20th Century's intellectual property rights, including the *Predator* movie currently in development by 20th Century.

38.     By reason of the foregoing, there now exists between the parties an actual and justiciable controversy concerning the validity of Notice One and 20th Century's and defendants' respective rights.

39.     A declaration is necessary and appropriate at this time in light of the purported effective termination date and the ongoing development of the next *Predator* movie.

40.     20th Century has no adequate remedy at law.

41.     Accordingly, 20th Century seeks, pursuant to 28 U.S.C. § 2201, a judgment from this Court that Notice One is invalid and therefore that the Grant will not terminate on April 17, 2021.

## COUNT II: ACTION FOR DECLARATORY RELIEF

### [Against All Defendants, as to Validity of Notice Two]

42.     20th Century repeats and realleges each allegation contained in paragraphs 1 through 41 of this complaint as if fully set forth herein.

43.     Defendants have served 20th Century with Notice Two, which contains a purported effective date of June 14, 2022.

44.     Defendants have not withdrawn Notice Two.

45.     Notice Two is invalid as a matter of law because it was served less than two years before its effective date, in violation of 17 U.S.C. § 203(a)(4)(A).

46.     Pursuant to Notice Two, defendants purport to recapture the exclusive rights in the *Hunters* Screenplay upon the June 14, 2022 effective date.

47.     By virtue of defendants' conduct, 20th Century has a real and reasonable apprehension of litigation over any claim by defendants that 20th

COMPLAINT FOR
DECLARATORY RELIEF

Century's continued development of the next *Predator* movie infringes defendants' rights and has thus been brought into conflict with defendants.

48.     Defendants' conduct threatens to place a cloud over 20th Century's intellectual property rights, including the *Predator* movie currently in development by 20th Century.

49.     By reason of the foregoing, there now exists between the parties an actual and justiciable controversy concerning the validity of Notice Two and 20th Century's and defendants' respective rights.

50.     A declaration is necessary and appropriate at this time in light of the purported effective termination date and the ongoing development of the next *Predator* movie.

51.     20th Century has no adequate remedy at law.

52.     Accordingly, 20th Century seeks, pursuant to 28 U.S.C. § 2201, a judgment from this Court that Notice Two is invalid and therefore that the Grant will not terminate on June 14, 2022.

## PRAYER FOR RELIEF

WHEREFORE, 20th Century prays for a judgment against defendants as follows:

A.     For a declaration that Notice One is invalid;

B.     For a declaration that Notice Two is invalid;

C.     For 20th Century's attorney fees and costs incurred; and

D.     For such other and further relief as the Court deems just and equitable.

1

2

3

Dated:  April 15, 2021                    O'MELVENY & MYERS LLP

4

5

By:  _____ */s/ Daniel M. Petrocelli* _____
                    Daniel M. Petrocelli

6

7

Attorneys for Twentieth Century Fox
Film Corporation d/b/a 20th Century
Studios

8

9

10

## **DEMAND FOR JURY TRIAL**

11

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, 20th Century

12

hereby demands a trial by jury for all issues triable to a jury.

13

14

Dated:  April 15, 2021                    O'MELVENY & MYERS LLP

15

16

By:  _____ */s/ Daniel M. Petrocelli* _____
                    Daniel M. Petrocelli

17

18

Attorneys for Twentieth Century Fox
Film Corporation d/b/a 20th Century
Studios

19

20

21

22

23

24

25

26

27

28

- 10 -

# EXHIBIT A

TWENTIETH CENTURY FOX FILM CORPORATION



## OPTION AGREEMENT

### PURCHASE OF LITERARY MATERIAL

THIS AGREEMENT, made and entered into as of the 22nd day of January, 1985, by and between James E. Thomas and John C. Thomas (herein referred to collectively as "Owner") and Twentieth Century Fox Film Corporation, a Delaware corporation (herein referred to as "Purchaser").

1.  OWNER'S REPRESENTATIONS AND WARRANTIES:

    (a)  <u>Sole Proprietor</u>:  Owner represents and warrants to Purchaser that Owner is the sole and exclusive proprietor, throughout the world of that certain original literary material written by Owner entitled "HUNTER".  Said literary material and all existing and future forms, versions and adaptations thereof whatsoever, and each and all parts of the same, are herein collectively referred to as the "Literary Property".

    (b)  <u>Facts</u>:  Owner represents and warrants to Purchaser that the following statements are true and correct in all respects with respect to said literary material:

        (I)  Owner is the sole author of said literary material.

        (III) The Literary Property has not been published in any place in the world; no copyright relating to the Literary Material has been effected, and no registration relating to copyright protection thereof has been made.  No Motion Picture or dramatic version of the Literary Property, or any part thereof, has been manufactured, produced, presented or authorized; no radio or television development, presentation or program based on the Literary Property, or any part thereof, has been manufactured, produced, presented, broadcast or authorized; and no written or oral agreements or commitments whatsoever with respect to the Literary

01010058.SSSˣ 2/02-14-85
Purchase of Literary Material   -1-

Twentieth Century Fox Film Corporation   P.O. Box 900   Beverly Hills CA 90213   (213) 277-2211
Cable Address   TWENTFOX Los Angeles   TELEX 674875



Property or with respect to any rights therein, have heretofore been made or entered into by or on behalf of Owner.

(c)  <u>No Infringement or Violation of Third Party Rights</u>: Owner represents and warrants to Purchaser that Owner has not adapted the Literary Property from any other literary, dramatic or other material of any kind, nature or description, nor, excepting for material which is in the public domain, has Owner copied or used in the Literary Property the plot, scenes, sequence or story of any other literary, dramatic or other material; that the Literary Property does not infringe upon any common law or statutory rights in any other literary, dramatic or other material; that insofar as Owner has knowledge, no material in the Literary Property is libelous or violative of the right of privacy of any person and the full use of the rights in the Literary Property which are covered by the within option would not violate any rights of any person, firm or corporation, and that the Literary Property is not in the public domain in any country in the world where copyright protection is available.

(d)  <u>No Impairment of Rights</u>:  Owner represents and warrants to Purchaser that Owner is the exclusive proprietor, throughout the world of the rights in the Literary Property which are covered by the within option; that Owner has not assigned, licensed nor in any manner encumbered, diminished or impaired said rights; that Owner has not committed nor omitted to perform any act by which said rights could or will be encumbered, diminished or impaired; and that there is no outstanding claim or litigation pending against or involving the title, ownership and/or copyright in the Literary Property, or in any part thereof, or in the rights which are covered by the within option.  Owner further represents and warrants that no attempt hereafter will be made to encumber, diminish or impair any of the rights herein granted and that all appropriate protection of such rights will continue to be maintained by Owner.

2.  <u>GRANT OF OPTION</u>:  Owner hereby grants to Purchaser, its successors and assigns, the exclusive and irrevocable right and option, for the Option Period specified in Paragraph 3. hereof, to purchase from Owner the worldwide Motion Picture and all analogous and allied rights, including without limitation the use of the title, in and to the Literary Property in perpetuity (as more particularly described in Exhibit "A" hereof) for the purchase price and upon all of the other terms and conditions specified in said Exhibit "A".

01010058.SSS* 2/02-14-85
Purchase of Literary Material   -2-

3.  OPTION PERIOD:

(a)  Initial Option Period:  The within option shall be effective during the period commencing on the date hereof and ending one (1) year after the delivery to Purchaser of First Set of Revisions pursuant to the agreement for writing services between Owner and Purchaser dated January 22, 1985 ("Writer Agreement") ("Initial Option Period").

(b)  Extended Option Period:  Purchaser shall have the right to extend the Initial Option Period for one (1) additional year ("Extended Option Period") prior to the expiration of the Initial Option Period.

(c)  Extensions:  The Initial or Extended Option Periods shall be extended by a period of time equal to any delay in delivery of any Form of Work under the Writer Agreement including those resulting from any event of Force Majeure as defined therein.

4.  EXERCISE OF OPTION:

(a)  Notice of Exercise:  If Purchaser elects to exercise or extend the within option, Purchaser (at any time during the Option Period) shall serve upon Owner written notice of the exercise thereof by addressing such notice to James E. Thomas and by depositing such notice, so addressed, postage prepaid, in the United States mail as hereinabove specified shall constitute service thereof, and the date of such deposit shall be deemed to be the date of service of such notice.

(b)  Additional Documentation:  If Purchaser exercises the within option, Owner, without cost to Purchaser (other than the consideration provided for herein or in Exhibit "A") shall execute, acknowledge and deliver to Purchaser, or shall cause the execution, acknowledgement and delivery to Purchaser of, such further instruments as Purchaser may reasonably require in order to confirm unto Purchaser the rights, licenses, privileges and property which are the subject of the within option.  If Owner shall fail to execute and deliver or to cause the execution and delivery to Purchaser of any such instruments, Purchaser is hereby irrevocably granted the power coupled with an interest to execute such instruments and to take such other steps and proceedings as may be necessary in connection therewith in the name and on behalf of Owner and as Owner's attorney-in-fact.  Owner shall supply all supporting agreements and documentation requested by Purchaser.

5.   EXHIBIT "A": Concurrently herewith, Owner and Purchaser are signing, subject to the condition hereinafter specified, the Agreement of Sale, undated, between Owner and Purchaser, marked Exhibit "A", attached hereto and made a part hereof.  If Purchaser exercises the within option, then Purchaser shall insert the date of the exercise of option as the date of the Agreement of Sale and the signature of Exhibit "A" hereof by Owner and Purchaser shall be deemed final and effective, and said Exhibit "A" shall be a valid and binding instrument and shall irrevocably vest in Purchaser all of the rights granted to Purchaser thereunder.  If Purchaser does not exercise the within option, then said Exhibit "A" shall be deemed of no force or effect whatsoever.

6.   OPTION CONSIDERATION:

(a)   Initial Option Payment:  As consideration in full for the grant by Owner to Purchaser of the within option, and for all the promises, representations and warranties made by Owner hereunder, Purchaser shall pay to Owner the sum of $10,000 receipt of which is hereby acknowledged.

(b)   Extended Option Payment:  Purchaser may extend the Option Period by paying Owner the sum of $10,000 prior to the expiration of the initial Option Period.

7.   RESTRICTIONS:  During the Option Period, Owner shall not exercise or otherwise utilize any of the rights herein granted to Purchaser and as more particularly described in Exhibit "A" hereof.

01010058.SSS# 2/02-14-85
Purchase of Literary Material   -4-

8.   ASSIGNMENT:   This Option Agreement and the rights granted
hereunder may be assigned by Purchaser to any other person, firm
or corporation.

IN WITNESS WHEREOF, the parties hereto have signed this Option
Agreement as of the day and year first hereinabove written.

JAMES E. THOMAS

JOHN C. THOMAS                                    ("OWNER")

TWENTIETH CENTURY FOX FILM CORPORATION
                    ("PURCHASER")

By _____
   Its _____
        LEON S. BRACHMAN
        EXECUTIVE VICE PRESIDENT
        TWENTIETH CENTURY-FOX PRODUCTIONS

Commitment Approved
By_____
Date_____
      Cash Approved
By_____
Date   MAR



01010058.SSS* 2/02-14-85
Purchase of Literary Material   -5-

# TWENTIETH CENTURY FOX FILM CORPORATION



"EXHIBIT "A"

PURCHASE OF LITERARY MATERIAL

This Agreement, dated _____ day of _____, 198_, by and between JAMES E. THOMAS and JOHN C. THOMAS (collectively "Owner"), and TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation ("Purchaser").

1.   <u>OWNER'S REPRESENTATIONS AND WARRANTIES</u>:

(a)   <u>Sole Proprietor</u>:  Owner represents and warrants to Purchaser that Owner is the sole and exclusive proprietor, throughout the world of that certain original screenplay written by Owner presently entitled "HUNTER".  Said literary material and all existing and future forms, versions and adaptations thereof whatsoever, and each and all parts of the same, are herein collectively referred to as the "Literary Property".

(b)   <u>Facts</u>:  Owner represents and warrants to Purchaser that the following statements are true and correct in all respects with respect to said Literary Property:

(i)   Owner is the sole author of said Literary Property.

(ii)  The Literary Property has not been published in any place in the world; no copyright relating to the Literary Property has been effected, and no registration relating to copyright protection thereof has been made. No Motion Picture or dramatic version of the Literary Property, or any part thereof, has been manufactured, produced, presented or authorized; no radio or television development, presentation or program based on the Literary Property, or any part thereof, has been manufactured, produced, presented, broadcast or authorized; and no written or oral agreements or commitments whatsoever with respect to the Literary Property or with respect to any rights therein, have heretofore been made or entered into by or on behalf of Owner.

(iii-) None of the rights herein granted and assigned to Purchaser have been granted and assigned to any person, firm or corporation other than to Purchaser.

(c)  No Infringement or Violation of Third Party Rights: Owner represents and warrants to Purchaser that Owner has not adapted the Literary Property from any other literary, dramatic or other material of any kind, nature or description, nor, excepting for material which is in the public domain, has Owner copied or used in the Literary Property the plot, scenes, sequence or story of any other literary, dramatic or other material; that the Literary Property does not infringe upon any common law or statutory rights in any other literary, dramatic or other material; that insofar as Owner has knowledge, no material in the Literary Property is libelous or violative of the right of privacy of any person and the full use of the rights in the Literary Property herein granted to Purchaser would not violate any rights of any person, firm or corporation; and that the Literary Property is not in the public domain in any country in the world where copyright protection is available.

(d)  No Impairment of Rights:  Owner represents and warrants to Purchaser that Owner is the exclusive proprietor, throughout the world, of the rights in the Literary Property herein granted to the Purchaser; that Owner has not assigned, licensed nor in any manner encumbered, diminished or impaired said rights; that Owner has not committed nor omitted to perform any act by which the rights could or will be diminished or impaired, and that there is no outstanding claim or litigation pending against or involving the title, ownership and/or copyright in the Literary Property, or in any part thereof, or in the rights granted hereunder.  Owner further represents and warrants that no attempt hereafter will be made to incumber, diminish or impair any of the rights herein granted and that all appropriate protection of such rights will continue to be maintained by Owner.

2.  OWNER'S INDEMNIFICATION:  Owner does hereby agree to at all times indemnify and save harmless Purchaser, its successors, assigns and licensees, from and against any and all claims, demands and/or causes of action arising out of or resulting from any breach by the Owner of any of Owner's representations, warranties, covenants and/or agreements herein contained.

3.  GRANT OF RIGHTS:  Owner does hereby sell, grant, convey and assign unto Purchaser, its successors, assigns and licensees, forever including any periods of copyright renewal, all of Owner's right, title and interest in and to the Literary Property,

including without limiting the generality of the foregoing, the following exclusive rights in and to the Literary Property.

(a)  <u>Motion Picture Rights</u>:  The sole and exclusive Motion Picture rights of every kind, nature and description, throughout the world, in and to the Literary Property, including without limitation, the sole and exclusive right, throughout the world, to make, produce, adapt, sell, lease, rent, exhibit, perform and generally deal in and with and copyright and renew copyright and in any manner exploit and dispose of Motion Picture versions of the Literary Property, or any part or portion thereof.

(b)  <u>Television</u>:  Without limiting the generality of the grant to Purchaser of Motion Picture Rights in the Literary Property, all television rights of every kind, nature and description (including Television Motion Picture Rights), solely and exclusively throughout the world, in and to the Literary Property, including the right to make, produce, adapt, project, exhibit and/or broadcast, visually and/or audibly programs, episodes, Motion Pictures or any other versions of the Literary Property or any part thereof by means of the medium known as television or by any process now or hereafter devised analogous thereto, including without limitation free television, pay television, subscription television, Cable television, satellite television, public television and educational television and all analogous communication uses and exhibitions pursuant to or on any form or device of electronic communication by which pictures and sound are transmitted to the public.

(c)  <u>Characters, Title, Remakes, Sequels</u>:  The sole and exclusive right throughout the world to use the characters and characterizations contained in the Literary Property and any Motion Picture versions thereof, in any and all lan-guages, with or without sound accompaniment and with or without the interpolation of musical numbers therein, to adapt one (1) or more versions of the Literary Property, to add to and subtract from the Literary Property, change the sequence thereof, use a portion or portions of the Literary Property, change the title of the Literary Property, use the title of the Literary Property or any of its components without limitation for any musical or lyrical composition whether or not contained in the sound track of any of said Motion Picture versions, or any other mechanical reproduction of the material contained therein, change the characters in the Literary Property, change the descriptions of said characters, and use all thereof in new versions, adaptations, remakes, and sequels (including without limitation Additional Motion Pictures, Owner Sequel Motion Pictures and Studio

Sequel Motion Pictures), in any and all languages, and to register and obtain copyright and copyright renewal therein throughout the world; and to use the title of the Literary Property or any of its components without limitation in connection with works or Motion Pictures wholly or partially independent of the Literary Property.

(d)   Sound Recording Rights:   The sole and exclusive right, throughout the world, to mechanically produce, reproduce and license the reproduction of spoken words, then from and/or based upon the text or theme of the Literary Property, on records, films, tapes or other devices designed and/or used for the purpose of producing and reproducing sound separately or in synchronism with, accompaniment of or supplementary to Motion Pictures, using for that purpose all or a part of the text, theme, title of or dialogue contained in the Literary Property.

(e)   Music:   The sole and exclusive right to include in any version of the Literary Property musical accompaniment, and to further include in any such version interpolations of musical compositions and/or lyrics to be performed and/or sung by the performers in any such version.

(f)   Versions:   The sole and exclusive right to make musical comedy, operetta, operatic and/or dramatico-musical Motion Picture and stage versions of every kind and nature based upon the Literary Property.

(g)   Radio:   The right to broadcast the Literary Property, or any part or version thereof, by means of radio processes.

(h)   Publications:   The right to prepare, publish, and copyright or cause to be prepared, published and copyrighted in any and all languages, in any and all countries in the world, in any form or media (including but not limited to press books, press notices, trade journals, periodicals, newspapers, heralds, fan magazines, souvenir programs, picture books, comic books, illustration books and/or activity books or booklets), synopses, revised and/or abridged versions of the Literary Property adapted from the Literary Property or from any Motion Picture or other version thereof.

(i)   Commercial Tie -Ups/Merchandising:   The right to exclusively use and exploit and to license others to utilize and exploit all commercial tie-ups and merchandising rights of any sort and nature arising out of or connected with any or all of the following:  (i) the Literary Property; (ii) any Motion Picture version of the Literary Property; (iii) the

01010058.SSS*: 3/02-22-85
Purchase of  Literary Material   -9-.

title or any titles of the Literary Property or any Motion
Picture version thereof; (iv) the characters contained in the
Literary Property or any Motion Picture versions thereof; (v)
the names, likenesses or characteristics of said characters;
(vi) physical properties or other materials appearing or used
in or in connection with all or any part of the Literary
Property or any Motion Picture versions thereof.

4.   EXERCISE OF PURCHASER'S RIGHTS:   It is agreed that all rights
granted to Purchaser under this Agreement may be exercised by
Purchaser (without the payment of any additional consideration by
Purchaser except as elsewhere herein provided) with respect to all
drafts, revisions, arrangements, adaptations, dramatizations,
translations (insofar as Owner is able to obtain such rights) and
other versions of the Literary Property which may heretofore have
been written or which may hereafter be written by or with the
sanction of Owner.   It is further agreed that Purchaser shall be
under no obligation to exercise or put to use any of the rights
acquired by Purchaser under this Agreement.

5.   PUBLIC DOMAIN MATERIAL:   Nothing in this Agreement shall ever
be deemed to restrict, diminish or impair the rights of either of
the parties hereto to utilize freely, in any work or production,
any story, idea, plot, theme, sequence, scene, episode, incident,
name, characterization or dialogue which may be in the public
domain, from whatever source derived.

6.   DEFINITIONS:

(a)   "Motion Picture":   The term "Motion Picture" means
pictures of every kind and character whatsoever, including
all present and future technological developments, whether
produced by means of any photographic, electrical, elec-
tronic, mechanical or other processes or devices now known or
hereafter devised, and their accompanying devices and
processes whereby pictures, images, visual and aural
representations are recorded or otherwise preserved for
projection, reproduction, exhibition, or transmission by any
means or media now known or hereafter devised in such manner
as to appear to be in motion or in sequence.

(b)   "Television Motion Picture":   The term "Television
Motion Picture" means a Motion Picture primarily intended to
be initially distributed for exhibition by means of the
medium known as television or by any process now or hereafter
devised analogous thereto without a charge being made to the
viewer by the telecaster for the privilege of viewing such
telecast, as a Pilot or as an episode of an episodic or
anthology television series or as a single television
program.

01010058.SSS* 3/02-22-85
Purchase of  Literary Material  -10-

(c)  "Theatrical Motion Picture": The term "Theatrical Motion Picture" means a Motion Picture primarily intended to be initially distributed for exhibition in conventional or drive-in theatres open to the general public on a regularly scheduled basis where a fee is charged for admission to view the Motion Picture.

(d)  "Additional Motion Picture": A Motion Picture based upon some portion of the plot or story line from the Literary Property upon which a prior Motion Picture was based, utilizing characters from the Literary Property, but which portion of the plot or story line was not used in such prior Motion Picture.

(e)  "Owner Sequel Motion Picture": A Motion Picture based upon an Owner-Written Sequel.

(f)  "Owner-Written Sequel": New literary material created or written by Owner in which:

  (i)  The principal character(s) is taken from the Literary Property and

  (ii) Said principal character(s) is shown as participating in new and different events and situations from the events and situations in which said principal character(s) participated in the Literary Property or in any Motion Picture produced hereunder, and

  (iii) The plot or story differs from that of the Literary Property or of any Motion Picture produced hereunder.

(g)  "Pilot": A Television Motion Picture produced as a sample for the purpose of interesting an exhibitor or sponsor in ordering additional Television Motion Pictures with respect to which the producer has entered into options with the principal players to perform roles in such additional Television Motion Pictures. A Pilot may be exhibited separately or as an episode of an episodic or anthology television series.

(h)  "Remake": A Motion Picture, other than the first Motion Picture produced hereunder, which is based upon a prior Motion Picture based upon the Literary Property or upon the same elements, the plot or story of the literary material upon which the first Motion Picture was based. The term Remake does not include.

  (i)  an Additional Motion Picture,

(II) an Owner Sequel Motion Picture,

(III) a Studio Sequel Motion Picture or

(Iv) foreign, shortened or expanded versions of the prior Motion Picture.

(I)   "Studio Sequel Motion Picture":   A Motion Picture In which

(I)   One or more of the principal characters is taken from the Literary Property upon which a prior Motion Picture produced hereunder is based and/or from a prior Motion Picture produced hereunder, and

(II) Said principal character(s) is shown as participating, for the most part, in new and different events and situations from the events and situations in which said principal character(s) participated (whether or not as principal character(s)) in the Literary Property or In said prior Motion Picture or any Remake thereof or in any earlier Studio Sequel Motion Picture or any Remake thereof or in any Additional Motion Picture.

(III) The plot or story differs from that of the Literary Property or of said prior Motion Picture or any Remake thereof or of any earlier Studio Sequel Motion Picture or any Remake thereof or of any Additional Motion Picture.

The term Studio Sequel Motion Picture does not include the first Motion Picture which may be produced hereunder, any Additional Motion Picture, any Remake of the said prior Motion Picture, any Remake of any Studio Sequel Motion Picture, or any Remake, nor an Owner-Sequel Motion Picture.

7.   INSTITUTION OF LEGAL ACTION:   Owner does hereby grant unto Purchaser the free and unrestricted right, but at Purchaser's own cost and expense, to Institute in the name and on behalf of Owner any and all suits and proceedings at law or in equity to enjoin and restrain any Infringements of the rights herein granted, and Owner does hereby assign and set over unto Purchaser any and all cause or causes of action arising or resulting by reason of or based upon such Infringement or Infringements, and Owner does hereby assign and set over unto Purchaser any and all recoveries obtained in any such action.  Owner agrees that Owner will not compromise, settle or in any manner interfere with any such litigation, if brought, and Purchaser does hereby agree to indemnify and save harmless Owner from any costs or damages which

Owner may suffer as a direct result of any such suits or proceedings.

8.   ADDITIONAL DOCUMENTATION:   Owner agrees to execute and procure any other and further instruments necessary to convey, assign and copyright the rights in the Literary Property herein granted by Owner to Purchaser in any country throughout the world. If it shall be necessary under the laws of any country that copyright registration be acquired in the name of Owner, Purchaser is hereby authorized by Owner to apply for said copyright registration in the name of Owner, and, in such event, Owner shall and does hereby assign and transfer the same unto Purchaser, subject to the rights in the Literary Property reserved hereunder by Owner.   Owner further agrees, upon request, to duly execute, acknowledge, procure and deliver to Purchaser such short form assignments as may be requested by Purchaser for the purpose of recording in the United States or elsewhere.   If Owner shall fail to so execute and deliver or to cause the execution and delivery to Purchaser of the assignments or other instruments herein referred to, Purchaser is hereby irrevocably granted the power coupled with an interest to execute such assignments and instruments in the name of Owner and on behalf of Owner and as Owner's attorney in-fact.

9.   COPYRIGHT OF LITERARY PROPERTY:   If the Literary Property is hereafter published in any country in the world, Owner shall take and complete any and all steps and proceedings, required by the law of any country within which such publication occurs, to secure copyright in the Literary Property and to prevent the Literary Property from falling into the public domain by reason of such publication.   Owner shall take such steps and proceedings as may be necessary to renew or extend any and all copyrights now or hereafter secured upon the Literary Property.   As a material part of the consideration moving to Purchaser for its execution of this Agreement, Owner, without the payment of any further consideration by Purchaser, shall (promptly upon any such renewal or extension) assign to Purchaser, for such renewed or extended term, all of the rights in the Literary Property which are granted to Purchaser under this Agreement.   If Owner shall fail to do any of the things specified in this Paragraph, Purchaser is hereby granted the right and authority to perform such acts and take such proceedings in the name and on behalf of Owner and as Owner's attorney-in-fact.

10.   PARTIES BOUND:   This Agreement shall bind and inure to the benefit of the respective parties hereto, their heirs, executors, administrators, successors and assigns, forever.

11.   COPIES OF LITERARY PROPERTY:   The Owner agrees to furnish to Purchaser, upon the execution of this Agreement, five (5) printed or typewritten copies of the Literary Property in the same form in

01010058.SSS* 3/02-22-85
Purchase of  Literary Material  -13-

which said material was presented to the public, or, if no such presentation has been made, then in the form presented to Purchaser.

12.   NOTICES:  All notices to Purchaser under this Agreement shall be sent by United States registered mail, postage prepaid, or by telegram addressed to Twentieth Century Fox Film Corporation, Attention:  Studio Legal Affairs Department, Box 900, Beverly Hills, California 90213; and all notices to Owner under this Agreement shall be sent by United States registered mail, postage prepaid, or by telegram addressed to Owner c/o James E. Thomas, 1-3/4 Reef Street, Marina del Rey, California 90292.  The deposit of such notice in the United States mail or the delivery of the telegram message to the telegraph office shall constitute service thereof and the date of such deposit or delivery shall be deemed to be the date of service of such notice.

13.   AGENT COMMISSIONS:  Purchaser shall not be liable for any compensation or fee to any agent of Owner in connection with this Agreement.

14.   CUMULATIVE RIGHTS AND REMEDIES:  All rights, licenses, privileges and other property granted herein shall be cumulative and Purchaser may exercise or use any of them separately or in conjunction with any one (1) or more of the others.

15.   PURCHASE PRICE:  As consideration in full for all of the rights in the Literary Property herein sold, granted, conveyed and assigned by Owner to Purchaser hereunder, and for all of the promises, representations and warranties made by Owner hereunder, Purchaser shall pay to Owner the sum of $55,000 ("Purchase Price") at the time said option is exercised, but in no event later than the commencement of principal photography of the first Theatrical Motion Picture based upon the Literary Property, provided, however, that if at the time of the exercise of the Option, Owner has not become a member of the Writers Guild of America ("WGA") Purchaser shall have the right to deduct all such sums required by WGA from the Purchase Price and to remit same to the WGA.

16.   RELATIONSHIP:  This agreement between the parties does not constitute a joint venture or partnership of any kind.

17.   ASSIGNMENT:  Purchaser may assign this Agreement and its rights hereunder in whole or in part to any firm, corporation or person.

18.   WAIVER:  A waiver by either party of any term or condition of this Agreement in any instance shall not be deemed or construed to be a waiver of such term or condition for the future, or any subsequent breach thereof.  All remedies, rights, undertakings,

01010058.SSS* 3/02-22-85
Purchase of Literary Material   -14-

obligations and agreements contained in this Agreement shall be
cumulative and none of them shall be in limitation of any other
remedy, right, undertaking, obligation or agreement of either
party.

19.  SEVERABILITY:  If any provision of this Agreement as applied
to either party or any circumstance shall be adjudged by a court
to be void or unenforceable: such shall in no way affect any other
provision of this Agreement, the application of such provision in
any other circumstance or the validity or unenforceability of this
Agreement.

20.  GOVERNING LAW:  This Agreement shall be construed in
accordance with the laws of the State of California applicable to
agreements which are executed and fully performed within the State
of California.

21.  CAPTIONS:  Captions are inserted for reference and con-
venience only and in no way define, limit or describe the scope of
this Agreement or intent of any provision.

22.  ENTIRE UNDERSTANDING:  This Agreement contains the entire
understanding of the parties hereto relating to the subject matter
specified herein and this Agreement cannot be changed or
terminated orally.

IN WITNESS WHEREOF the parties hereto have signed this Agreement
this _____ day of _____, 198_.

JAMES E. THOMAS                    )
                                   )
                                   )
                                   )
                                   )
                                   ) ("Owner")
JOHN C. THOMAS                     )
                                   )
TWENTIETH CENTURY FOX FILM         )
   CORPORATION                     )
            ("Purchaser")          )
                                   )
By _____          )

Its  LEON S. BRACHMAN
     EXECUTIVE VICE PRESIDENT
     TWENTIETH CENTURY-FOX PRODUCTIONS

Commitment Approved
By
Date
Form Approved
By
Date

01010058.SSS* 3/02-22-85
Purchase of Literary Material  -15-

> Form Approved
> By ___ *un*
> Studio Legal Affairs
> Date  MAR   N 1985

### SHORT FORM OPTION

OPTION:   For good and valuable consideration, receipt of which is
hereby acknowledged, the undersigned, James E. Thomas and John C.
Thomas (collectively "Owner"), does hereby grant to Twentieth
Century Fox Film Corporation ("Buyer"), its successors and
assigns, the exclusive and irrevocable right and option to
purchase and acquire from Owner all of Owner's right, title and
interest (including certain motion picture, remake, sequel, and
other ancillary and allied rights) in and to the literary work
entitled   "HUNTER", written by Owner, including without
limitation, any and all synopses, treatments, scenarios,
screenplays and all copyrights in connection therewith and all
tangible and intangible properties respecting all of the
foregoing, whether in existence or known now or in the future.

WARRANTIES:   Owner represents and warrants that said literary work
is unpublished.

CONTROLLING DOCUMENT:   This document is subject to all of the
terms and conditions of an Option Agreement for Purchase of
Literary Material dated January 22, 1985 between Owner and Buyer.
Said Option Agreement contains certain restrictions on the use of
the rights set forth therein.

IN WITNESS WHEREOF, the undersigned has executed this document as
of January 22, 1985.

```
                          JAMES E. THOMAS        )
                                                 )
                                                 )
                          [signature]            )
                                                 ) ("Owner")
                          JOHN C. THOMAS         )
                                                 )
                                                 )
                          [signature]           )
```

01010058.SSS# 3/02-22-85
Purchase of Literary Material   -1-

Form Approved
By_____
Studio Le: .l Affairs
Date _____

## SHORT FORM ASSIGNMENT

**ASSIGNMENT:**  For good and valuable consideration, receipt of which is hereby acknowledged, the undersigned, James E. Thomas and John C. Thomas (collectively "Owner"), does hereby transfer and assign to Twentieth Century Fox Film Corporation ("Buyer"), its successors and assigns forever, all of Owner's present and future right, title and interest in and to the literary work entitled "HUNTER", written by Owner, including without limitation, any and all synopses, treatments, scenarios, screenplays and all copyrights in connection therewith and all tangible and intangible properties respecting all of the foregoing, whether in existence or known now or in the future.

**WARRANTIES:**  Owner represents and warrants that said literary work is unpublished.

**CONTROLLING DOCUMENT:**  This transfer and assignment is subject to all the terms and conditions of an Agreement for Purchase of Literary Material dated _____ between Owner and Buyer.  Said Agreement contains certain restrictions on the use of the rights transferred therein.

IN WITNESS WHEREOF, the undersigned has executed this document as of _____, 19 __ .

JAMES E. THOMAS )
)
)
)
) ("Owner")
JOHN C. THOMAS )
)
)
)

01010058.SSS× 3/02-22-85
Purchase of Literary Material   -1-

# TWENTiETH CENTURY FOX FILM CORPORATION



Legal Department

January 28, 1985

Mr. Laurence P. Pereira
1015 North Doheny Drive
Los Angeles, California  90069

Dear Mr. Pereira:

We take notice of an agreement between you and James E. Thomas and
John C. Thomas ("Authors") dated December 5, 1984 wherein the Authors
granted an option to you to purchase the motion picture and television
rights to an original screenplay entitled "HUNTERS" ("Basic Property").
A copy of such agreement is attached hereto.  Your signature below, and
the signatures of Authors will confirm to us that such agreement has been incorporated
~~declared null and void by both parties and that you no longer hold~~ into the below
~~option in the Basic Property~~.  You acknowledge that Authors are entering  said agree-
into an agreement with Twentieth Century Fox Film Corporation ("Fox")    ments.
wherein Fox is acquiring an option to purchase the motion picture and
allied rights in and to the Basic Property.  Your signature below and
that of Authors will confirm to us that the rights in and to the Basic
Property are ~~free and clear~~. taken subject to the below said agreements.

Reference is made to those agreements between the parties and Fox denom-
inated as Acquisition Agreement, Writing Agreement and Producing Agreement.

Very truly yours,

AGREED AND ACCEPTED:

_Laurence P. Pereira_  2-7-85                TWENTIETH CENTURY FOX FILM CORPORATION
Laurence P. Pereira                          _Alfred C. Pariser_
                                             Alfred C. Pariser

ACKNOWLEDGED:

_James E. Thomas_   2/7/85
James E. Thomas     ("Author")

_John C. Thomas_    12-7-85
John C. Thomas      ("Author")

MAR 12 1985
MICROFILMED

# EXHIBIT B

## NOTICE OF TERMINATION

### "PREDATOR"

To:   Twentieth Century Fox Film Corporation        Fox Entertainment Group, LLC
      10201 W. Pico Blvd.                            1211 Avenue Of The Americas
      Los Angeles, CA 90064                          New York, NY 10036
      Attn: Legal Department                         Attn: Legal Department

      Twenty-First Century Fox, Inc.
      1211 Avenue Of The Americas
      New York, NY 10036
      Attn: Legal Department

PLEASE TAKE NOTICE that pursuant to Section 203(a) of the United States Copyright

Act (17 U.S.C. § 203(a)) and the regulations issued thereunder by the Register of Copyrights, 37

C.F.R. § 201.10, the authors James E. Thomas and John C. Thomas, being the persons entitled to

terminate transfers pursuant to said statutory provisions, hereby terminate the grant of their rights

under the copyright(s) in and to their original screenplay entitled "Hunter(s)" a.k.a. "Predator"

that was made in those certain agreements identified below, and they set forth in connection

therewith the following[1]:

1.      The names and addresses of the grantees and/or successors in title whose rights

are being terminated are as follows: Twentieth Century Fox Film Corporation, 10201 W. Pico

Blvd., Los Angeles, CA 90064; Twenty-First Century Fox, Inc., 1211 Avenue Of The Americas,

New York, NY 10036; and Fox Entertainment Group, LLC, 1211 Avenue Of The Americas,

New York, NY 10036. Pursuant to 37 C.F.R. Section 201.10(d), service of this notice is being

made by first class mail, postage pre-paid to the above grantees or successors-in-interest at the

addresses shown.

---

[1] Nothing contained in this notice shall be construed to in any way limit or waive any right or remedy of James E. Thomas and/or John C. Thomas, at law or in equity, with respect to the subject matter hereof, all of which are hereby expressly reserved.

2.      The work to which this Notice of Termination applies is the original screenplay written by James E. Thomas and John C. Thomas entitled "Hunter" a.k.a. "Hunters" a.k.a. "Predator" (the "Work")[2]. The Work was registered with the U.S. Copyright Office on August 4, 1986 under Copyright Registration No. PAu000869999.

3.      This Notice of Termination applies to the grant by James E. Thomas and John C. Thomas of their rights under copyright in and to the Work to Twentieth Century Fox Film Corporation made on April 16, 1986, pursuant to that certain Option Agreement for Purchase of Literary Material dated January 22, 1985 and the Purchase of Literary Material Agreement attached thereto, and any exhibits and/or schedules thereto and/or amendments thereof..

4.      The effective date of termination of the grant(s) identified hereinabove shall be April 17, 2021.

5.      James E. Thomas and John C. Thomas are the joint authors of the Work and entitled to exercise their termination interests, pursuant to 17 U.S.C. § 203(a), as to the grant(s) identified hereinabove.  This Notice has been signed by all persons needed to terminate said grant(s) under 17 U.S.C. § 203(a).

Dated: June 7, 2016

James E. Thomas
c/o Toberoff & Associates, P.C.
23823 Malibu Road, Suite 50-363
Malibu, California 90265

John C. Thomas
c/o Toberoff & Associates, P.C.
23823 Malibu Road, Suite 50-363
Malibu, California 90265

---

[2] This Notice of Termination applies as well to each and every element of such Work, including the characters therein, and to each and every prior draft or iteration of the Work.

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing document described as

NOTICE OF TERMINATION to be served this 9 day of June, 2016, by First Class Mail,

postage prepaid, upon each of the following:

Twentieth Century Fox Film Corporation
10201 W. Pico Blvd.
Los Angeles, CA 90064
Attn: Legal Department

Fox Entertainment Group, LLC
1211 Avenue Of The Americas
New York, NY 10036
Attn: Legal Department

Twenty-First Century Fox, Inc.
1211 Avenue Of The Americas
New York, NY 10036
Attn: Legal Department

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9

day of June, 2016, at Malibu, California.

Marc Toberoff
Toberoff & Associates, P.C.
23823 Malibu Road, Suite 50-363
Malibu, California 90265

Counsel for James E. Thomas and John C. Thomas

# EXHIBIT C

## NOTICE OF TERMINATION:

### "PREDATOR"

To:  20ᵗʰ Century Studios, Inc.  The Walt Disney Company
  Twentieth Century Fox Film 500 S. Buena Vista Street
  Corporation     Burbank, CA 91521
  10201 W. Pico Blvd. *by*  Attn: Legal Department
  Los Angeles, CA 90035
  Attn: Legal Department

PLEASE TAKE NOTICE that pursuant to Section 203(a) of the United States Copyright Act (17 U.S.C. § 203(a)) and the regulations issued thereunder by the Register of Copyrights, 37 C.F.R. § 201.10, the authors James E. Thomas and John C. Thomas, being the persons entitled to terminate transfers pursuant to said statutory provisions, hereby terminate the grant of the transfer of rights under copyright in and to the work entitled "Hunter" a.k.a. "Hunters" a.k.a. "Predator" that was made in that certain agreement identified below, and they set forth in connection therewith the following[1]:

1.  The names and addresses of the grantees and/or successors in interest whose rights are being terminated are as follows: 20ᵗʰ Century Studios, Twentieth Century Fox Film Corporation, 10201 W. Pico Blvd., Los Angeles, CA 90035; *by* The Walt Disney Company, 500 S. Buena Vista Street, Burbank, CA 91521.Pursuant to 37 C.F.R. Section 201.10(d), service of this notice is being made by first class mail, postage pre-paid to the above grantees or successors-in-interest at the addresses shown.

---

[1] Nothing contained in this notice shall be construed to in any way limit or waive any right or remedy of James E. Thomas and/or John C. Thomas, at law or in equity, with respect to the subject matter hereof, all of which are hereby expressly reserved.

2.      The work to which this Notice of Termination applies  is the original dramatic work written by James E. Thomas and John C. Thomas and entitled "Hunter" a.k.a. "Hunters" a.k.a. "Predator" (the "Work").[2] A subsequently revised version of the Work was registered with the U.S. Copyright Office on August 4, 1986 under Copyright Registration No. PAu000869999 .

3.      This Notice of Termination applies to the grant by James E. Thomas and John C. Thomas of their rights under copyright in and to the Work to Twentieth Century Fox Film Corporation dated April 16, 1986 (pursuant to the option agreement for purchase of literary material between the same parties, dated January 22, 1985), and any amendments, exhibits or schedules thereto.

4.      The effective date of termination of the grant(s) identified hereinabove shall be June 14, 2022.[3]

5.      James E. Thomas and John C. Thomas are the joint authors of the Work and entitled to exercise their termination interests, pursuant to 17 U.S.C. § 203(a), as to the grant(s) identified hereinabove.  This Notice has been signed by all persons needed to terminate said grant(s) under 17 U.S.C. § 203(a).

---

[2] This Notice of Termination applies as well to all elements of such Work, including the characters therein, and to any and all prior draft(s) or prior iteration(s) of the Work.

[3] The terminated Fox grantees were served with a prior notice of termination long in advance on June 9, 2016 setting forth an effective termination date of April 17, 2021, which notice was accepted for recordation by the U.S. Copyright Office on June 28, 2016 (Doc. No. V9938D157), and is valid and effective under 17 U.S.C. § 203(a). This alternate notice, with an effective termination date of June 14, 2022, is served purely out of an abundance of caution given an objection by Fox that the above-referenced grant allegedly qualifies for the special termination time "windows" in 17 U.S.C. § 203(a)(3) applicable to book publication grants; although this objection runs contrary to the legislative history of  § 203(a)(3), *see* Copyright Reg. Supp. Rep., pp. 74–75; *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 33-34 (2d Cir. 2015), and M. Nimmer and D. Nimmer, 3  *Nimmer on Copyright*, § 11.05[A][2].

2

Dated: January 12, 2021                    TOBEROFF & ASSOCIATES, P.C.

                                           _____
                                                 Marc Toberoff

                                           Toberoff & Associates, P.C.
                                           23823 Malibu Road, Suite 50-363
                                           Malibu, California 90265
                                           Tel: (310)-246-3333

                                           As counsel for and on behalf of
                                           James E. Thomas and John C. Thomas

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing document described as

NOTICE OF TERMINATION: "PREDATOR" to be served this 12th day of January, 2021, by

First Class Mail, postage prepaid, upon each of the following:

20th Century Studios, Inc.
Twentieth Century Fox Film Corporation
10201 W. Pico Blvd. ~~LY~~
Los Angeles, CA 900~~35~~
Attn: Legal Department

The Walt Disney Company
500 S. Buena Vista Street
Burbank, CA 91521
Attn: Legal Department

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th

day of January, 2021, at Malibu, California.

Marc Toberoff
Toberoff & Associates, P.C.
23823 Malibu Road, Suite 50-363
Malibu, California 90265

Counsel for James E. Thomas and John C. Thomas

4